IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| EAST TENNESSEE NATURAL GAS CO., | ) ) | Case No. 4:02-CV-00220 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| 2.67 ACRES IN SMYTH COUNTY, VIRGINIA, SUSAN GREER, et al., | ) ) | By: Jackson L. Kiser Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

Before me are the Defendants' *Objections to the Commission's Report*. For the reasons
stated below, I will overrule all six of the specific *Objections* posed by the Defendants.

**I.      PROCEDURAL HISTORY**

The case was heard in the U.S. District Court in Abingdon, VA on August 25 – 26, 2005
before three Commissioners. On December 14, 2005, the Commission filed its *Findings of Fact
and Conclusions of Law*. On January 3, 2006 the Defendants filed *Objections* to the
Commission's *Findings,* and on January 20, 2006 the Plaintiff filed a *Response* to the
Defendants' *Objections*. On March 3, 2006 a hearing was held before this Court regarding the
Defendants' *Objections*.

**II.     STATEMENT OF FACTS**

The property that is the subject of this case was taken on June 5, 2003. Susan Greer
("Defendant") owns 138.26 acres of land in Smyth County ,Virginia. East Tennessee Natural
Gas ("ETNG" or "Plaintiff") owned a binding 30-foot easement across the Greer property before
this condemnation. The parents of the Defendant's husband granted an easement to the Plaintiff

-1-

on September 15, 1964.  Within the existing easement, the Plaintiff owned and operated an eight-inch diameter pipeline for transportation of natural gas.  In this condemnation, the Plaintiff acquired the right to place a second pipeline within its original easement plus the right to use 2.67 acres as temporary workspace for approximately two years.  The second pipeline, the subject of this case, is twenty-four inches in diameter and is within the original easement.  Half of the permanent easement area on the Defendants' property is located on pasture land and the other half is located in woodland.  The addition of the second pipeline does not alter or add to the limitations of use that existed prior to this condemnation action within the thirty-foot easement. The easement does not limit the Defendants' use of their property outside the thirty-foot easement.

The temporary workspace area on the Defendants' property is adjacent to the original easement and extends seventy feet south of the existing easement into the pasture portion of the property.  The total workspace area in the woodland section of the Defendants' property was reduced to seventy-five feet in width and extended forty-five feet south of the existing easement. The Plaintiff performed construction work in the original thirty-foot easement area.

The Plaintiff used the temporary workspace and permanent easement area including a portion of the Defendants' driveway within the temporary workspace.  Some minor damage was done to portions of the Defendants' driveway within the temporary workspace, the damage was repaired, and the Defendants are not seeking damages for the repair.  The Plaintiff did not regularly use the Defendants' driveway outside of the temporary workspace.

The Defendants lease their pasture land to a local farmer, they have no financial interest in any crops grown by the farmer, and they have failed to prove monetary loss or damage to the

crops caused by the pipeline.  A woodcutter offered the Defendants $6,000 for an anticipated

fifty-foot wide area of standing timber within the woodland of her property before the clearing of

the right-of-way occurred.  After the Plaintiff's contractors cleared a twenty-five foot area of the

timber, the same woodcutter paid the Defendants $3,000 for the cut timber.

The Plaintiff's appraiser, James Johnston, testified that the addition of the second larger

pipeline in the easement was of little or no consequence.  The Defendants' appraiser, Larry

Johnston, evaluated the land as separate parcels of residence, farm, and woodland and arrived at

a damage figure of $27,959.  The Defendants themselves valued the property much higher than

her own appraiser and asked for a total damage award of $105,000.

## III.    STANDARD OF REVIEW

Prior to the hearing before the Commission, the parties in this case agreed to have this

case heard by a Commission, and agreed that the standard of review for objection to the

Commission's *Report*, pursuant to *Federal Rule of Civil Procedure* 53(g)(3)(A), would be a

standard of clear error.  This stipulation and procedure was memorialized by an *Order* of this

Court dated September 29, 2004.

A finding is "clearly erroneous" when the reviewing court views all the evidence and is

left with the definite and firm conviction that a mistake has been committed.  *Anderson v.*

*Bessmer City*, 470 U.S. 564, 573 (1984), citing *U.S. v. U.S. Gypsum Company*, 333 U.S. 364,

395 (1948).  This standard does not entitle a reviewing court to reverse the finding of the trier of

fact simply because it would have decided the case differently.  The reviewing court's function is

not to decide factual issues de novo.  *Id.*; *Zenith Radio Corporation v. Hazeltine Research, Inc.*,

395 U.S. 100, 123 (1969).  If the findings by the trier-of-fact are plausible in light of the record

Case 4:02-cv-00220-JLK   Document 106   Filed 04/28/06   Page 3 of 23   Pageid#: 427

viewed in its entirety, the reviewing court may not reverse the trier-of-fact even if the reviewing court would have weighed the evidence differently had it been sitting as the trier of fact. *Id.* at 574. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Id.*; *U.S. v. Yellow Cab Company*, 338 U.S. 338. 342 (1949).

## IV.    COMMISSION'S FINDINGS

The Commission found that the highest and best use of the property is for residential development – both sides agree. The Commission found that the subject property, valued as a whole, has been damaged $12,000 by the addition of the second large pipeline in the existing easement. The Commission's finding is based on the evidence of the appraisers, the landowners, its own view of the property, and the public perception as it affects residue market value. The Commission found that prospective buyers would pay less for the property after the take because they have a natural distaste for pipeline easements, pipeline maintenance requirements, and safety fears – real or imagined.

The Commission opines that fair market value is a fickle standard that can and is affected by perceptions, rumors, and fears in an upscale residential market such as the one in this case. Therefore, the Commission finds that the landowner incurred a small loss. The Commission findings are as follows:

1. Defendant is entitled to $12,000 in damages based upon the before and after value of her land valued as a whole. This is because of the adverse effect on market value and additional burden caused by the addition of a larger, higher pressure line in the original easement. Public perception of such an addition in a highest and best use residential development would result in a lower after value. We rely heavily, but not entirely on our view in this determination. Had the Defendant's evidence of before and after use been stronger, we might have allowed more damage on this issue. We feel that we are within the evidence and the view in making this decision. We do not feel that Plaintiff's suggested total award of $3,513 represents "just compensation" under the circumstances.

-4-

2. Rental value or [sic] temporary workspace and access road -- $1,806.00;

3. Cutting trees (pulpwood) -- $172.00; and

4. Loss of ability to grow crops -- $1,500.00.

The Commission awarded total damages of $15,478.**00.**

## V.    DISCUSSION REGARDING DEFENDANTS' OBJECTIONS

### A.    Defendant Greer Owns Multiple Tracts

The Defendants first object by arguing that there is evidence – the land and tax records of Smyth County and the testimony by its witness Carole Burkett – showing that the Defendants owned five separate parcels of land. The Defendants point out that the Commission's *Findings* state: "The defendant, Susan Greer, owns 138.26 acres of land in Smythe [sic] County, Virginia which land was bought and inherited by Mrs. Greer and her late husband." The Defendants further argue that the land on which the temporary work space was granted should have been considered as a separate lot. The Commission found that the Defendants were entitled to $1,806.00 for rental value of the temporary workspace and access road. The Defendants point out that the temporary construction rights were acquired by the Plaintiff for two (2) years. The Defendants argue that the award given by the Commission for the temporary work space, based on rental value, is artificially low because the Commission failed to value the work space as part of a separate lot. The Defendants submit that the Commission committed clear error in not valuing the Greer property as separate lots.

With regard to the Defendants' first objection, the Plaintiff points out in its *Response* that the Defendants never specifically allege what finding of fact made by the Commission is clearly erroneous. The Plaintiff argues that the Commission in fact made no finding regarding how

-5-

many tracts make up the Defendants' parcel. On Page 2 of its *Findings*, the Commission merely said "[t]he Defendant, Susan Greer, owns 138.26 acres of land in Smythe [sic] County, Virginia. . . " On Page 4 of its *Findings*, the Commission also found:

> We feel that the highest and best use of the property is for residential development. Both sides seem to agree. We feel that the property valued as a whole has been damaged $12,000 by the addition of a second larger pipeline in the existing easement.

The Plaintiff simply argues that it was not clear error for the Commission to find that the highest and best use for the property was for residential development. The Plaintiff then argues that it was not clear error for the Commission to evaluate the property as a whole, as opposed to separate tracts, when determining the value of the Defendants' property for residential development. The Plaintiff further argues that the Defendants' argument, that the property consists of multiple tracts which would have resulted in higher compensation if considered separately, fails to recognize that the proper measure for damages for the use of temporary workspace is rental value of the property – not the per acre value of the property if sold separately.

The Commission did not commit clear error in making its findings based on the property as a "whole" rather than as individual tracts. Although the deeds and tax records describe different parcels, the parcels are contiguous or in close proximity to one another and are owned by a single owner. Therefore, the Defendants have the right to obliterate the property lines and divide or sub-divide the property in any manner they choose.

With regard to the Defendants' *Objection* to the Commission's valuation of the temporary workspace, the Defendants never claim that the Commission committed clear error in not considering the land on which the temporary work space was located to be separate land.

-6-

The Defendants merely ask this Court to review the Commission's decision. Furthermore, the Defendants never proffer how the Commission might have come to a more acceptable figure or what such a figure might be. The standard of review in this case is clear error and none can be found when the Defendants' objection does not allege it.

### B. Defendants are Due Compensation for Second Pipeline

The Defendants argue that compensation is due for the installation of the twenty-four inch pipeline or that compensation is due for construction use of the land for two years inside the original easement. The Defendants point out that while the Commission never expressly held that there is no right to compensation for the right to install the second twenty-four inch pipeline, the findings do not assign any value or payment for the use of the 1.17 acres within the original thirty-foot easement used by the Plaintiff for construction of the new twenty-four inch pipeline.

In its *Findings*, the Commission states that "ETNG acquired the right to place a second pipeline within its original 30 foot wide easement plus the right to use 2.67 acres as temporary work space." The Commission continues: "The addition of a second pipeline does not alter or add to the limitations of use that existed prior to this condemnation action within the 30-foot easement." The Defendants further point out that the Commission notes in its *Findings* that it was instructed (*Page 6, Paragraph 7*) by this Court on November 1, 2004 of the fact that the landowner is not legally entitled to compensation for easement rights obtained in an earlier original grant. The Defendants conclude that "The Commission awarded her damages for the installation of this new pipeline on her land, and the effect on her land, but not any compensation for the rights taken by ETNG to place the new 24 inch pipeline on her land, or for the temporary use of this 1.17 acres of her land for two (2) years during and after construction."

-7-

In its *Response*, the Plaintiff argues that the Commission did award the Defendants compensation for the construction of the second pipeline within the easement. The Plaintiff argues that the correct measure of just compensation due to a landowner for the taking of a permanent easement is the difference in the fair market value of the property before the taking and the fair market value immediately after the taking. Although the Plaintiff argued in this case that there was no decrease in the fair market value of the property after the take because the property was already encumbered by an easement for the Plaintiff's existing eight-inch pipeline, the Commission disagreed and awarded the Defendants $12,000 for the difference in the before and after value of the property. The Plaintiff argues that this $12,000 compensated the Defendants for the Plaintiff's right to install and maintain the twenty-four inch pipeline.

This Court did issue instructions to the Commission in this case but those instructions were given on November 18, 2004 – not November 1, 2004 as stated by the Commission in its *Findings*. Additionally, those instructions stated nothing about the landowner not being legally entitled to compensation for easement rights obtained in an earlier original grant. However, even if this Court had instructed the Commission in such a manner, it is irrelevant. The fact that the Commission could not compensate the Defendants for easement rights obtained in an earlier original grant does not prevent the Commission from compensating the Defendants for new easement rights, not accounted for in an earlier grant, but which occur on the same piece of land that was the subject of the prior easement agreement. That is, the Commission could not re-compensate the Defendants for the easement that it has already given the Plaintiff, and for which the Defendants have already been compensated – the easement which contained the eight-inch pipeline. However, the Commission could, and consequently did, require the Plaintiff to

-8-

compensate the Defendants for putting a new twenty-four inch pipeline in the original easement because the terms of the original easement did not allow for a twenty-four inch pipe.

In this case, the original easement (*Defendants' Exhibit 2*) from 1964 in which the Plaintiff was given the right to install an eight-inch pipeline can only be read to say that the Plaintiff was being given the right to install one, presumably eight-inch, pipeline because the deed expressly grants "a perpetual right of way for the purpose of laying, constructing, maintaining . . . *a* pipe line . . ." (emphasis added). When the easement was granted on September 15, 1964, it was for an easement for the laying and maintaining of a single eight-inch pipeline and not for the laying and maintaining of newer and bigger pipelines thirty-nine years later.

The additional pipeline, however, did not place an additional restriction on the Defendants' use of their land. The legal rights acquired by the condemnation were virtually identical to the rights granted by the owners in the 1964 grant of easement. The only potential additional burden on the land would be the possible increase of maintenance activity because of the second pipeline. No additional land was acquired and the Commission made no specific award for any additional rights acquired by the Plaintiff. The Commission did award $12,000 to the Defendants based on the value of their land as a whole before the take and after the take – which is an appropriate measure of just compensation. The failure of the Commission to itemize the components of its award does not invalidate it.

### C.    The Plaintiff Had No Right to Use Defendants' Driveway

When determining whether the Defendants should be compensated for use of a portion of the Defendants' driveway, the Commission found (*Page 3*):

The driveway crosses an adjoining landowner's property by a non-exclusive right-of-way. The landowner granted the Company temporary work space between Sherwood Drive and Mrs. Greer's tennis court which area includes Mrs. Greer's driveway. The Company used the temporary work space and permanent easement area including that portion of the Greer driveway within the temporary workspace. Some minor damage was done to portions of the Greer driveway in the temporary work space. (*Findings*, Page 3)

The Defendants first allege that the Plaintiff stipulated that Mrs .Greer had been assured in writing that the Plaintiff would not use her driveway during construction. The Plaintiff argues that it never stipulated that it would not use the Defendants' driveway. Instead, the Plaintiff argues that it stipulated that it would not use the Defendants' driveway on her property, but that it would only use her driveway in the temporary workspace on her neighbor's property. The Defendants have failed to show how this stipulation by the Plaintiff proves that the Commission made clear error in arriving at its above-cited findings.

The Defendants then argue that there was no documentary evidence presented to the Commission by the Plaintiff to show that the Plaintiff actually received permission from the Defendants' neighbor to use the Defendants' driveway. The Defendants point out that the only such evidence was the oral testimony of Peter Cassan. The Defendants also argue that there was no evidence, other than Cassan's testimony, that the Defendants actually had a non-exclusive right of way across the neighbor's land. The Defendants argue that they presented more credible evidence to show that their driveway *is* located on their land and *is not* contained in a non-exclusive right-of-way across their neighbor's land than the Plaintiff provided to refute such evidence. The Defendants submit that the Commission committed clear error in making its findings based solely on Cassan's testimony.

In its *Objections*, the Defendants asked the Court to receive a copy of a plat showing the subject land at oral argument because the plat offered to the Commission as Defendants' Exhibit

-10-

33 was difficult to read. Defendants' Exhibit 33, as introduced to the Commission, is not a plat but is a photograph of a tennis court and a driveway; I nonetheless allowed the Defendants to present a copy of the plat at oral argument. Neither the plat that was presented at oral argument, nor the argument made by the Defendants in their *Objections*, nor the oral argument made by the Defendants has been sufficient to convince me that the Commission made clear error in finding that the Defendants' neighbor had the authority to grant, and did grant, the Plaintiff permission to use the Defendants' driveway during construction of the pipeline.

In their *Objections*, the Defendants also cite Defendants' Exhibit 4; the Defendants claim that this Exhibit is a deed from 1990 which shows that Mrs. Greer did not have a right-of-way across her neighbor's property. However, Defendants' Exhibit 4 is a deed from 1993. For purposes of this *Opinion*, I will assume that the Defendants meant to cite Defendants' Exhibit 5 in their *Objections;* Defendants' Exhibit 5 is a deed from 1990. The Defendants argue that Mrs. Greer did not have a right-of-way across her neighbor's land because her own land is adjacent to a state road. Therefore, the Defendants argue that they are due compensation for the Plaintiff's use of her driveway as temporary workspace. The Plaintiff repaired the driveway after using it and the Defendants have not asked for compensation for actual damages to the driveway; instead the Defendants are presumably only asking for rental value as compensation because the driveway was used by the Plaintiff as temporary workspace.

The Defendants argue that Exhibit 5 shows that there is no right of way for the Defendants' driveway. Exhibit 5 shows that the Defendant purchased her original property, "Lot C," from Judith Greer Schulz and Stephen Schulz. The Defendants claim in their *Objections* that Lots "A" and "B" were owned by family members and separated "Lot C" from the state road.

-11-

The Defendants argue that Exhibit 5 shows that the family members who owned Lots "A" and "B" granted the Defendants a right-of-way across Lots "A" and "B" which gave the Defendants direct access to the state road. The Defendants claim in their *Objections* that they later acquired Lots "A" and "B" from their relatives. The Defendants argue that this acquisition effectively terminated the right-of-way across Lots "A" and "B" because the Defendants owned that property. The Defendants argue that this information is evidence that Mrs. Greer did not need a right-of-way across her neighbor's land, that Mrs. Greer did not have a right-of-way across her neighbor's land, and that therefore Mrs. Greer's neighbor had no authority to grant the Plaintiff permission to use Mrs. Greer's driveway.

The Plaintiff claims that the evidence presented at trial does show that it acquired temporary workspace from the Defendants' neighbor and that the temporary workspace area included a portion of the non-exclusive right-of-way over the neighbor's land which contained the Defendants' driveway. The Plaintiff contends that evidence presented to the Commission showed that the right-of-way was not exclusive; the Plaintiff points out that this was Mrs. Greer's own testimony. The Plaintiff argues that accordingly, the neighbor had the authority to grant it the right to use the area of temporary workspace, including the driveway. The Plaintiff continues that it would be responsible for any damage to the driveway; however, in this case the Plaintiff repaired the driveway and paid the owner of the servient estate for the use of the non-exclusive right-of-way. The Plaintiff also points out that it is not obligated to pay additional compensation to the Defendants for use of the temporary workspace and that the Defendants have not asked for compensation for actual damages to the driveway.

The Defendants have not provided sufficient evidence to prove to me that the

-12-

Commission committed clear error in not awarding compensation for the Plaintiff's use of the Defendants' driveway. As the finder of fact, the Commission heard the testimony of Peter Cassan and the Defendants were given an opportunity to cross-examine Peter Cassan. Peter Cassan testified that the Defendants' driveway was located on a non-exclusive right-of-way across the neighbor's property, and that the neighbor had given the Plaintiff permission to use a portion of the driveway located on that non-exclusive right-of-way for temporary workspace. Furthermore, the Plaintiff claims that Mrs. Greer testified before the Commission that she has a right-of-way across her neighbor's property for her driveway. Both parties agree that the driveway was sufficiently repaired after construction of the pipeline.

As the finder of fact, the Commission was also presented with Defendants' Exhibit 4. Defendants' Exhibit 4 is a deed which allegedly helps to show that the portion of the Defendants' driveway used by the Plaintiff is actually located on the Defendants' land, and cannot be located on the neighbor's land by way of a non-exclusive right-of-way. As the finder of fact, the Commission was also presented with a plat of the Defendants' property. After viewing all the evidence before it, the Commission made the findings cited above, that the Plaintiff had permission from the Defendants' neighbor to use a non-exclusive right-of-way on the neighbor's land which contained a portion of the Defendants' driveway, and awarded the Defendants no compensation for the Plaintiff's use of the Defendants' driveway.

I cannot find that the Commission committed clear error merely because it relied more heavily on the evidence proffered by the Plaintiff than that proffered by the Defendants. If the Commission accepted the Plaintiff's contention that the Defendants' driveway was contained in a non-exclusive right-of-way across the neighbor's land, then the Commission could have

-13-

rationally found that the Plaintiff rightly acquired and paid for the right to use a portion of the Defendants' driveway from the Defendants' neighbor.

### D. Defendants are Entitled to $3,000 in Additional Timber Damages

When determining the compensation due Defendants for the timber taken by the Plaintiff, the Commission found: (*Page 4*):

> A woodcutter, Lacy Phillips, offered Mrs. Greer $6,000 for an anticipated fifty foot wide area of standing timber within the woodland on her property before clearing of the right-of-way occurred. After the Company's contractors cleared a twenty-five foot area of the lumber, Mr. Phillips paid Mrs. Greer $3,000.00 for the cut timber. Thus, she sustained only a small pulpwood loss.

The Commission awarded the Defendants $172.00 for the cutting of the trees. The Defendants claim that it is undisputed that the contractor who cleared the trees for the Plaintiff burned some of the timber within two days of cutting it while the Defendants were attempting to salvage it; the $3,000 received by the Defendants was for the unburned timber. The Defendants continue that the Commission failed to compensate the Defendants for the burned timber in spite of the fact that Mr. Phillips was prepared to pay the Defendants $6,000 before it was burned as opposed to the $3,000 that Mr. Phillips ultimately paid the Defendants.

The Defendants allege that the Commission committed clear error in finding that the Plaintiff cleared only a twenty-five foot area of trees on the Defendants' property and that the Plaintiff need only compensate them for the trees in that area. Mrs. Greer testified that according to her measurements there were fifty-feet of trees cleared by the Plaintiff along the entire 830-foot easement across her land – and that ten of the fourteen measurements she made were eighty feet or more. Furthermore, the Defendants argue that the Plaintiff had no witnesses who could refute the width that the trees were cut on the Defendants' land.

-14-

In its *Response*, the Plaintiff argues that the evidence supports the Commission's finding that the Defendants lost $3,000 worth of timber for which she was compensated. The Plaintiff alleges that the Commissioners measured the cleared right-of-way during their view of the property, and that the measurements in conjunction with the testimony from the witnesses supports the Commission's finding that the Plaintiff cleared an area of timber measuring twenty-five-feet in width. The Plaintiff argues that this is indeed half of the area for which Mr. Phillips gave the Defendants a quote, and that the Defendants were paid $3,000 by Mr. Phillips or half of the value of his quote. The Plaintiff claims that while there was testimony about the length of time they had to remove the timber before it was burned, there was no testimony that Mr. Phillips paid the Defendants less because some of the timber had burned.

While the Commission certainly could have awarded more compensation to the Defendants for the cleared timber, sufficient evidence exists to justify its holding. The Commission had the opportunity to measure the width of the timber cleared during its view and also heard testimony from both the Defendants and the Plaintiff about the width of the clearing.. With this information at its disposal coupled with other facts given by witnesses for both parties, it seems rational that the Commission decided that the width of the timber cut was twenty-five feet. It also seems rational for the Commission to therefore hold that the Defendants were entitled to half of the fair market value that they could have obtained from a timber cut measuring fifty-feet wide. For these reasons, I find that the Commission did not commit clear error in arriving at its finding.

### E.    Plaintiff Should Pay Crop Damages

When determining whether the Defendants should be compensated for damage done to

their crops by the Plaintiff, the Commission found (*Page 3*):

> Mrs. Greer leases her pastureland to a local farmer, Mr. Myers, who pays her for the lease. She has no financial interest in any crops grown by the lessee and she has failed to prove monetary loss caused by the pipeline.

The Defendants argue that the Commission's findings allow the Plaintiff to damage the crops without having to compensate anyone. The Defendants feel that the Commission's findings are unfair and should be corrected by this Court. The Defendants also argue that they submitted sufficient evidence to prove crop damages; Mr. Myers testified without contradiction about the crop damage caused by the Plaintiff.

The Defendants argue that merely because the Plaintiff did not make Mr. Myers a defendant in this case does not mean there should be a loss without a remedy. The Defendants argue that the Commission's failure to compensate Mr. Myers or the Defendants as his lessor is inequitable and amounts to clear error. In its *Complaint* filed in this proceeding, the Plaintiff made all "unknown owners" parties to this proceeding; the Defendants claim that Mr. Myers may well be entitled to relief for crop damage as one of the "unknown owners." The Defendants state that they can envision a future scenario where Mr. Myers files suit against the Plaintiff because the Commission denied compensation for crop damages in this case. The Defendants argue that the Plaintiff could then argue that the rights of all "unknown owners" were foreclosed by the manner of filing and the procedure in this condemnation proceeding against Mr. Greer and "unknown owners" in the federal court which had jurisdiction in Smyth County, Virginia.

In its *Response*, the Plaintiff argues that the Defendants have no legal interest in any crops on their farm, did not personally sustain any loss from damages to crops as a result of the construction, and that any claim for crop destruction belongs to Mr. Myers. The Plaintiff

-16-

continues that if Mr. Myers wanted to obtain recovery from any lost crops he could have joined in this lawsuit since he was aware of it; the Plaintiff states that had he joined in this suit, it would have defended the claim of the lost crops on its merits. The Plaintiff contends that the Defendants' argument, that they should recover damages for the crops because the Plaintiff has not paid anyone else for them, is not founded on any law.

I find that the Plaintiff is correct: the Defendants should not be allowed to recover damages from the Plaintiff for the destruction of crops on their farm when the Defendants were not damaged by the destruction of the crops. I also believe that the Defendants' alleged fear that Mr. Myers' claim would be foreclosed in the future is empty. Mr. Myers is not an "unknown owner" of the property that is actually owned by the Defendants and rented to Mr. Myers; Mr. Myers is neither "unknown" nor is he an "owner." For these reasons, I find that the Commission did not commit clear error by not awarding compensation to the Defendants for damage caused to crops on their land by the Plaintiff.

### F.      Court Rulings Were Clearly Erroneous

The Defendants argue that the Commission committed clear error in making one ruling during the trial and one ruling before the trial of this case.

The first objection concerns a ruling made by a Commissioner during the hearing before the Commission. The Commissioner excluded from evidence an appraisal delivered to Mrs. Greer by the Plaintiff and performed by Greylock Advisory Group on October 28, 2002. The Defendants claims that they were going to use the appraisal to counter the stated value in the Plaintiff's *Complaint* and to "contradict the testimony of ETNG's late coming witness, James Johnston, when he testified for ETNG at trial."

-17-

In their *Objections to the Report of the Commissioner*, the Defendants did not provide any rationale or argument as to why they believe that the Commissioner committed clear error in excluding the Greylock appraisal. Furthermore, in their *Objections* the Defendants never alleged that the Commissioner made clear error in excluding the appraisal, only that this Court should reconsider the ruling. However, at oral argument the Defendants did allege that the Commission committed clear error in excluding the appraisal. The Defendants pointed out at oral argument that prior to the hearing before the Commission the Plaintiff had alleged that the appraisal was accurate. The Defendants further stated that the appraisal was therefore a party admission and should have been admissible before the Commission as such pursuant to *Federal Rule of Evidence* 801(d)(2). The Defendants stated at oral argument that the Commission deemed the appraisal hearsay and excluded it on those grounds. The Defendants claim that the Commission committed clear error in mis-applying *FRE* 801(d)(2).

In responding to the Defendants at oral argument, the Plaintiff argued that the Greylock appraisal is hearsay because it is an out of court statement offered for its truth. The Plaintiff argued that the appraisal cannot be an admission by a party opponent, pursuant to *FRE 801* because it never authenticated or adopted the appraisal. The Plaintiff further argued that the appraiser is not an agent of the Plaintiff. Finally, the Plaintiff also argued that the appraisal is inadmissible because it had been used in settlement negotiations with the Defendant.

The Defendants offer no proof that the Plaintiff adopted or authenticated the Greylock appraisal to the point of making it a non-hearsay admission by a party opponent pursuant to *FRE 801(d)(2)(B)*. Instead, if the Plaintiff paid for Greylock to perform the appraisal, and then chose not to offer it before the Commission, then it seems logical that the Plaintiff did not want to

-18-

adopt or authenticate the appraisal. Without the Plaintiff's adoption or authentication, the appraisal amounts to an out of court statement which the Defendants were offering to prove its truth. As stated many times above, my role at this point in this case is to determine if the Commission committed clear error in arriving at any finding to which the Defendants object. Based on the arguments made by the Defendants and the Plaintiff I cannot find that the Commission committed clear error in excluding the Greylock appraisal as hearsay.

The Defendants also object to a Commissioner's exclusion of the testimony of Charles Williams. On August 5, 2005, the Plaintiff filed a *Motion in Limine* to exclude the testimony of Charles Williams. In its *Memorandum in Support of its Motion*, the Plaintiff argued that the opinion, testimony, and report of the Defendants' expert, Charles Williams, should be excluded because it included improper damage valuation. Specifically, the Plaintiff argued that the Defendants were offering Williams as an expert on valuing trees. However, Williams could only offer evidence on the replacement value of trees, and Virginia law demands that the proper valuation is the market value. In its four-page *Memorandum in Support*, the Plaintiff cites precedent from Virginia Courts that clearly establishes fair market value as the proper damage valuation for trees in condemnation proceedings – as opposed to replacement costs.

On August 19, 2005, the Defendants filed a *Response to the Plaintiff's Motion in Limine*. In its seventeen-page *Memorandum in Response*, the Defendants cite precedent from Virginia courts that also clearly establishes fair market value as the proper damage valuation for condemnation proceedings, but that hints the Virginia Supreme Court could potentially establish replacement costs as the proper valuation if the proper circumstances were given it. The Defendants further cite a Fourth Circuit case, *U.S. v. Wise*, where the District judge's jury

-19-

instruction, where he told the jury that it could consider the replacement costs of shrubs and trees to aid it in determining the fair market value for purposes of damage valuation, was upheld . 131 F.2d 851 (1942). Furthermore, in their *Response* (Page 10) the Defendants point out the oral instruction given by this Court to the Commission on November 29, 2004 (*Transcript*, *Page 19*):

> But they [Defendants] also feel, and I would agree with this, that if the pipeline company does not restore the property to its original condition, then there would be an additional element of damages, which as the former commission considered. Such as the value of timber and that sort of thing, or in this case, **part of the value would be the restoration of the property to its original condition**. (emphasis added by Defendants in their *Response*).

The Defendants then argue that a "restoration of the property to its original condition" infers that the Defendants should be compensated for the replacement value of the trees and shrubs taken by the Plaintiff from the residential portion of their property so they could "restor[e] the property to its original condition."

On September 7, 2005 a Commissioner entered an *Order* in which he succinctly stated:

> Plaintiff's motion in limine to exclude the testimony of Charles Williams is granted in part and denied in part. Mr. Williams' testimony regarding the replacement value of the trees cut by ETNG on each property is excluded. The Chairman finds that replacement value is not the proper measure of damages as a matter of law. The remaining testimony of Mr. Williams is permitted.

In its *Response to the Objections of the Defendant to the Report of the Commissioners*, the Plaintiff argues that the Defendants are procedurally barred from objecting to a Commissioner's ruling in the *Order* dated September 7, 2005. The Plaintiff points out that Rule 53(g)(2) of the *Federal Rules of Civil Procedure* provides that "a party may file objections to – or a motion to adopt or modify – the master's order, report, or recommendation no later than 20 days from the time of the master's order . . ." The Plaintiff argues that the time to object to the Commissioner's *Order* expired on October 7, 2005. The Plaintiff further points out that if the

-20-

Defendants had timely objected, this Court could have ruled on the objection in time for the Commission to evaluate the excluded evidence had this Court agreed with the position taken by the Defendants. Having failed to timely object, the Plaintiff argues that the Defendants' *Objection* should be overruled.

The Plaintiff goes further to argue that even if the Court were to consider the Defendants' untimely objection, the objection must fail. Based on the arguments made in its *Memorandum in Support of its Motion in Limine*, which the Plaintiff incorporated into its *Response*, the Plaintiff argues that the Commissioner's exclusion of Charles Williams' testimony was pursuant to precedent, and was at a minimum not clearly erroneous.

The Plaintiff cited cases from Virginia courts which establish that damage valuation is based on fair market value in Virginia - the difference between the fair market value before and after a taking. The Defendants cited cases from Virginia and federal courts which establish that damage valuation is based on fair market value in Virginia, but which arguably suggest that in certain factual situations damage valuation can be based on replacement costs, or at the very least, replacement costs can be used to determine the loss in fair market value.

I agree with the Plaintiff that the Defendants' *Objection* to the Commission's *Order* excluding Williams' testimony is time barred by Rule 53(g)(2) of the *Federal Rules of Civil Procedure*. The Plaintiff rightly points out that if the Defendants had timely objected to the *Order* and had I granted their objection, then the Commission could have heard Williams' testimony. This points out the underlying wisdom of the rule. To delay appealing an evidentiary objection until the Commission has completed its work would be disruptive to the procedural framework of Rule 53.

The *2003 Amendments to Federal Rule of Civil Procedure 53(g)(2)* state: "Although a court may properly refuse to entertain untimely review proceedings, the court may excuse the failure to seek timely review." Even if I were to excuse the Defendants' failure to seek timely review, or even if the Defendants' *Objection* were timely, the facts of this case do not warrant the use of replacement costs as a means for determining just compensation. In this case, the trees damaged by the Plaintiff were in a forest near the home – the Defendants characterized the area as a "residential woods" – the trees were not landscaping for the residence. (*Reply*, *Page 7*). The damage done to the trees certainly reduced the fair market value of the property owned by the Defendants, but this loss in value has been accounted for in the Commission's award of just compensation. Additionally, the Commission made a judgment call in deciding that the Defendants had already been paid the market value of the trees and therefore the Commission did not need to consider the value of the trees in the just compensation award.

Perhaps, as the Fourth Circuit suggested in *U.S. v. Wise*, testimony regarding the replacement costs of the trees could have aided the Commission, as the finder of fact, in determining the ultimate loss in fair market value of the Defendants' property. However, the judgment call made by the Commission, which was based on the evidence and included a view of the property, is not clear error.

## VI.    CONCLUSION

For the reasons stated above, I will overrule all six of the specific *Objections* posed by the Defendants.

The Clerk of Court is directed to send a copy of this *Memorandum Opinion* and the

-22-

accompanying *Order* to all counsel of record.

Entered this 28th day of April, 2006.

s/Jackson L. Kiser
Senior United States District Judge